Filed 1/26/21  Klug v. Green CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAYMOND A. KLUG et al., | B296904 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. NC060795 |
| EDWARD GREEN III et al., | |
| Defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Reversed and remanded with directions.

Tredway, Lumsdaine & Doyle, Roy J. Jimenez and Brandon L. Fieldsted for Plaintiffs and Appellants.

Diem Law and Robin L. Diem for Defendant and Respondent Edward Green III.

Andrade Gonzalez, Sean A. Andrade and Henry H. Gonzalez for Defendant and Respondent Derek T. Dee.

1

# INTRODUCTION

This case arises from a dispute among partners in a medical practice partnership. The partners are corporations wholly owned by individual physicians in the medical practice. After a disagreement arose concerning several accounting matters, one corporate partner and the physician-owner of that corporation (plaintiffs) sued the partnership, the other corporate partners, and their physician-owners. In addition to stating four substantive causes of action (e.g., breach of the partnership agreement, breach of fiduciary duty), the complaint alleged each corporate partner was the alter ego of its physician-owner.

Two defendant physicians brought motions for summary judgment and, in the alternative, summary adjudication as to the four causes of action stated in the complaint. They did not address the issue of alter ego liability, however. The court found in favor of the physicians on the four causes of action, granted their motions for summary judgment, and entered judgments of dismissal. Plaintiffs appeal.

Plaintiffs contend the court erred by entering judgments in the physicians' favor because the alter ego issue remains to be litigated. The physicians claim plaintiffs failed to allege alter ego sufficiently, therefore relieving them of the obligation to litigate the issue on summary judgment. We conclude plaintiffs' allegations were sufficient and that the court erred in granting summary judgment. Accordingly, we reverse the judgments and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    The Parties

The plaintiffs and appellants are Raymond A. Klug, M.D., Inc., and Raymond A. Klug (plaintiffs). Klug practiced in, and his eponymous corporation was a member of, the Greater Long Beach Orthopaedic Surgical and Medical Group (the partnership). The partnership was dissolved in late 2016.

The defendants in this case include the partnership, the other corporate members of the partnership, and the physicians who own those corporations. As pertinent here, the corporate partner defendants include Derek T. Dee M.D., a Professional Corporation (Dee Corporation) and Edward Green III, a Medical Corporation (Green Corporation). The owners of those corporations, physicians Derek T. Dee and Edward Green III, are also named defendants (physician defendants) and are the respondents in this appeal.

### 2.    The Partnership

The partnership was governed by an amended partnership agreement dated October 1, 1980. As pertinent here, Section IX of the partnership agreement provides in pertinent part: "Temporary total disability occurs when a Fully Active Partner is suffering from a physical or mental incapacity as certified by a medical physician which prevents him from pursuing and devoting any of his time to the practice of medicine on behalf of the medical partnership. In the event any Fully Active Partner is absent from active practice because of an induction into the military service, or should become temporarily disabled due to illness or injury, as certified by a medical physician, the following terms and conditions shall apply: [¶] A. The partner shall

3

continue to receive 80% of the average 12-month's income that he is entitled to receive under Paragraph VII above for a period of ninety (90) days. In the ensuing one hundred eighty (180) days, he shall receive one half (1/2) of said average net income that he is entitled to receive under said Paragraph VIII. Thereafter, he shall not be entitled to receive any income until such time as he is again working full time in the partnership medical practice."

In May 2016, Klug informed the partnership that he had been diagnosed with lymphoma and was temporarily totally disabled within the meaning of the partnership agreement.

### 3. The Primary Dispute

The partnership made several payments to plaintiffs between June and August of 2016. The parties did not agree, however, on whether the payments were properly characterized as disability payments or partnership distributions. Plaintiffs also objected to the redistribution of overhead expenses in a manner benefitting certain partners, the manner in which partnership meetings were held, and the withholding of partnership financial information.

### 4. The Complaint

On September 2, 2016, plaintiffs filed the present suit against the partnership, the other corporate partners, and the other individual physicians who owned the corporate partners. A few weeks later, a majority of the corporate partners voted to dissolve the partnership effective September 30, 2016.

The complaint sets forth four causes of action: breach of contract (i.e., the partnership agreement), breach of fiduciary duty, dissolution of the partnership, and accounting. Plaintiffs allege the defendants breached the partnership agreement as

well as their fiduciary duties to plaintiffs by failing to pay them the full amount of disability payments required under the partnership agreement, reallocating the partnership overhead in a manner detrimental to plaintiffs, and refusing to disclose partnership financial information upon request. Plaintiffs also sought to dissolve the partnership and requested an accounting of the partnership's finances.

In addition, and as pertinent here, the complaint includes the following general allegation:

"At all times mentioned, Defendant corporations were wholly owned and controlled by the individual doctors for which they are named. At all times mentioned, there was and is a unity of interest and ownership which existed between the Doctors and their individual corporations, such that the separateness of the individual and the corporations never existed. Adherence to such fiction will result in fraud and inequity upon those persons that seek relief from the corporations. By reason thereof, the corporate veil of the individual medical corporations should be set aside so that the partner doctors may be held personally responsible and accountable for all acts and transactions of [the Partnership.]"

Dee and Dee Corporation answered the complaint, as did Green and Green Corporation.

## 5. Summary Judgment Proceedings[1]

### 5.1. Green's Motion

Green and Green Corporation (Green defendants) jointly filed a motion for summary judgment or, in the alternative, summary adjudication addressing plaintiffs' four causes of action. As pertinent here, the Green defendants contended that plaintiffs received all the disability payments owed under the partnership agreement. Accordingly, no breach of the partnership agreement or breach of fiduciary duty occurred in that regard. As to the reallocation of overhead expenses, the Green defendants noted that the complaint alleged Dee acted alone in that respect and plaintiffs confirmed that position in their discovery responses. Similarly, and with respect to the failure to provide requested financial information to plaintiffs, the Green defendants observed that plaintiffs had not alleged, nor had they indicated in their discovery responses, that they had requested any financial information from the Green defendants or that the Green defendants kept and maintained the partnership's financial records. Finally, the Green defendants asserted that the plaintiffs' causes of action for dissolution and accounting were moot because the partnership had been dissolved, had provided an accounting, and had made its final partnership distributions.

---

[1] The issue presented in this appeal does not require us to address the correctness of the trial court's adjudication of the complaint's four causes of action. In the interest of brevity, we discuss the substantive claims only insofar as is necessary to provide context for our analysis of the alter ego issue.

Plaintiffs opposed the motion. Mainly, plaintiffs focused on the interpretation of the partnership agreement and the proper characterization of payments made by the partnership to plaintiffs after Klug became temporarily disabled.

The parties appeared before the court and argued the case. After taking the matter under submission, the court issued its ruling. Although the Green defendants had not advanced distinct arguments as between themselves, the trial court addressed the potential liability of Green and Green Corporation separately. The court found that Green was not a partner in his individual capacity and, therefore, could not be liable for breach of either the partnership agreement or any fiduciary duty attendant to the partnership. The court further found that the dissolution claim was moot because the partnership had already been dissolved. The court also concluded that Green, individually, did not owe plaintiffs any accounting on behalf of the partnership.[2] After addressing each of the plaintiffs' four causes of action, the court granted Green's motion for summary judgment.

After the Green defendants gave notice of the court's ruling, plaintiffs objected to the entry of a judgment of dismissal in favor of Green. Plaintiffs noted that the operative complaint alleged alter ego liability, but Green had not addressed the issue

---

[2] The court found triable issues of material fact existed regarding Green Corporation's liability on the causes of action for breach of contract and breach of fiduciary duty. But the court granted Green Corporation's motion for summary adjudication on the two remaining causes of action. The court found the dissolution claim to be moot, as noted. And with respect to the accounting claim, the court concluded that the partnership might owe plaintiffs an accounting, but Green Corporation did not.

in his motion. Expressing concern that a judgment of dismissal could bar them from litigating the alter ego issue in the future, plaintiffs asked the court to refrain from entering judgment in favor of Green. The record does not reveal whether or how the court addressed plaintiffs' objection.

### 5.2. Dee's Motion

Dee and Dee Corporation (Dee defendants) jointly filed a motion for summary judgment or, in the alternative, summary adjudication addressing plaintiffs' four causes of action as well as plaintiffs' claim for punitive damages. As pertinent here, the Dee defendants contended that plaintiffs received all the disability payments owed under the partnership agreement. Accordingly, no breach of the partnership agreement or breach of fiduciary duty occurred in that regard. As to the reallocation of overhead expenses, the Dee defendants asserted the decision was made in accordance with the partnership agreement by a vote of the partners. With respect to the failure to provide financial information to plaintiffs, the Dee defendants observed that plaintiffs had not requested any financial information from them. The Dee defendants also asserted that plaintiffs' causes of action for dissolution and accounting were moot because the partnership had been dissolved, had provided an accounting, and had made its final partnership distributions. Finally, the Dee defendants argued that the allegations set forth in the complaint did not support plaintiffs' claim for punitive damages.

Plaintiffs opposed the motion. Again, plaintiffs focused substantially on the interpretation of the partnership agreement and the proper characterization of payments made by the partnership to plaintiffs after Klug became temporarily disabled. Plaintiffs also claimed triable issues of material fact existed

regarding the partnership decision-making process, the reallocation of overhead expenses, punitive damages, and the causes of action for dissolution and accounting.

Finally, plaintiffs argued that triable issues of material fact existed regarding their alter ego theory—a basis for liability the Dee defendants did not address in their motion. Plaintiffs asserted that "[Dee] failed to observe necessary corporate formalities[,]" "the corporation was just a shell[,]" and that Dee "was the sole employee of the corporation, its sole shareholder, [its] only director, and all funds held in the corporation were presumably transferred to him directly." Plaintiffs asserted in their separate statement the following additional fact: "Plaintiff has substantial evidence showing that alter-ego liability will apply in this case, as [Dee Corporation] was underfunded, had no other shareholders, no other employees and only paid … Dee the individual. As such, the actions taken by [Dee] Corporation were in fact taken by [Dee] the individual, and any judgment against the [Dee] Corporation should be attributed to the individual." Plaintiffs included a citation to the following portion of Dee's deposition:

"Q: When you were employed by [the partnership], did you operate under any – any other corporation or were you acting individually?

"A: I had a corporation.

"Q: And what was the name of that corporation?

"A: Derek T. Dee, MD, A Professional Corporation.

"Q: So you had the same name?

"A: No.

"Q: What's the difference in the name? I didn't catch that.

"A: The middle initial is T versus Tan.

9

"Q: I see. And when was that corporation established?

"A: Sometime around 2001.

"Q: Shortly after joining [the partnership]?

"A: It was – I believe it was established before that.

"Q: What was the reason for starting the new corporation, the Derek Tan Dee, Medical – or Professional Corporation?

"A: I was starting a new practice.

"Q: Going to the Derek T. Dee, MD, A Professional Corporation, did it have any employees other than yourself?

"A: No.

"Q: And the Derek T. Dee corporation was – was the partner in [the partnership]?

"A: Correct.

"Q: At the time that you were with [the partnership], did you work for any other entities besides the Derek T. Dee, A Professional Corporation?

"A: No.

…

"Q: Did the Derek T. Dee, MD, A Professional Corporation do any work outside of the … partnership from 2001 until 2016?

…

"A: No, it did not.

"Q: During the period of 2001 to 2016 did – did your corporation have regular shareholder meetings?

"A: Yes, it did.

"Q: How often did it meet, the shareholders?

"A: Annually.

"Q: And who were the shareholders of the corporation from 2001 to 2016?

"A: Myself.

"Q: And did it have a board of directors?

"A: I'm not certain.

"Q: Did your wife have any ownership in the Derek T. Dee corporation?

"A: No.

"Q: What was the purpose of setting up the Derek T. Dee corporation?

…

"A: That was what was advised to me.

"Q: Who advised you to set it up?

"A: I don't recall."

In reply, the Dee defendants argued that Dee was not a partner in the partnership and therefore could not be personally liable for any breach of contract or breach of fiduciary duty. Further, they contended, plaintiffs' attempt to hold Dee liable under the alter ego theory failed because they did not produce sufficient evidence to create a triable issue of fact.

The parties appeared before the court and argued the case. After taking the matter under submission, the court issued its ruling. Consistent with its ruling on the Green defendants' motion, the court found that Dee was not a partner in his individual capacity and, therefore, could not be liable for breach of either the partnership agreement or any fiduciary duty attendant to the partnership. The court also rejected plaintiffs' alter ego claim, finding the deposition excerpts submitted to the court were insufficient to create a triable issue of material fact on that question. As before, the court found that the dissolution claim was moot because the partnership had already been dissolved. The court also concluded that Dee, individually, did not

owe plaintiffs any accounting on behalf of the partnership. The court then granted Dee's motion for summary judgment.[3]

### 6. Judgments of Dismissal and the Appeals

The court entered a judgment of dismissal in favor of Green on February 11, 2019. Plaintiffs timely appealed.

The court also entered a judgment of dismissal in favor of Dee on July 1, 2019. Plaintiffs timely appealed.

At the parties' request, we consolidated the appeals for all purposes.

## DISCUSSION

Because plaintiffs do not challenge the court's summary adjudication of the complaint's four substantive causes of action, we consider only whether the court erred by granting summary judgment and entering judgments of dismissal in favor of the physician defendants. Plaintiffs contend they adequately pleaded an alter ego theory of liability against the physician defendants and, because that issue was unaddressed in the motions for summary judgment, the court erred in dismissing the physician defendants from the case. The physician defendants argue the

---

[3] The court found triable issues of material fact existed regarding Dee Corporation's liability on the causes of action for breach of contract and breach of fiduciary duty. But the court granted Dee Corporation's motion for summary adjudication on the two remaining causes of action. The court found the dissolution claim to be moot, as noted. And with respect to the accounting claim, the court concluded that the partnership might owe plaintiffs an accounting, but Dee Corporation did not. Finally, the court found no triable issue of material fact existed regarding punitive damages.

12

theory was not adequately pleaded and, in any event, no evidence supports liability under an alter ego theory.

## 1.     Scope and Standard of Review

The applicable standard of review of a ruling on a motion for summary judgment is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850; Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must " 'show[ ] that one or more elements of the cause of action ... cannot be established' by the plaintiff. [Citation.]" (*Aguilar*, at p. 853.) A defendant meets its burden by presenting affirmative evidence that negates an essential element of a plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim. (*Aguilar*, at p. 855.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz, supra*, 24 Cal.4th at p. 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler*, at p. 768.)

13

In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 629–630.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Id.* at p. 630.)

2. **The court erred by granting the physician defendants' motions for summary judgment.**

   2.1. **The complaint adequately pleads the alter ego theory of liability.**

The pleadings play a key role in a summary judgment motion. Our Supreme Court has explained: "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' [Citations.]" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate the plaintiff's theories of liability as alleged in the complaint; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings. (*Conroy*, at pp. 1254–1255; see *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 182 ["We do

14

not require [a defendant] to negate elements of causes of action plaintiffs never pleaded"].)

The physician defendants contend plaintiffs failed to plead the alter ego theory adequately in their complaint and, therefore, they had no obligation to address the theory in their motions for summary judgment. Plaintiffs did not set forth their alter ego theory as an independent cause of action. But although that type of pleading is allowed, it is not required. Several procedural vehicles are available to a party asserting alter ego liability. " 'The first option is to sue the alter ego directly in an action for breach of contract … . Another is to first obtain a judgment for breach of contract against the signatories to the contract, followed by a motion to amend the judgment to add the alter egos as defendants. [Citations.] Still another is, after obtaining a judgment against the signatories, to institute an independent action against the alter egos … . These different procedural vehicles, however, are identical in substance: in all three, the proof of alter ego is the same.' [Citation.]" (*347 Group, Inc. v. Philip Hawkins Architect, Inc.* (2020) 58 Cal.App.5th 209, 214.)

In any event, plaintiffs' complaint does include an allegation relating to alter ego liability. The alter ego theory has two basic elements. "[T]o prevail in a cause of action against individual defendants based upon disregard of the corporate form, the plaintiff must plead and prove such a unity of interest and ownership that the separate personalities of the corporation and the individuals do not exist, and that an inequity will result if the corporate entity is treated as the sole actor." (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 749 (*Vasey*); *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 415 (*Leek*).)

15

Plaintiffs' complaint alleges both required elements. As noted *ante*, plaintiffs alleged with respect to the first element that the "[d]efendant corporations were wholly owned and controlled" by the physician defendants and that "there was and is a unity of interest and ownership which existed between the Doctors and their individual corporations, such that the separateness of the individual and the corporations never existed." As to the second element, plaintiffs allege that denying the unity of interest between the physicians and their corporations "will result in fraud and inequity" for plaintiffs. And although plaintiffs did not use the words "alter ego," they were not required to do so. (See *Leek, supra*, 194 Cal.App.4th at p. 415 ["To recover on an alter ego theory, a plaintiff need not use the words 'alter ego,' but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor"].) Plaintiffs did, however, reference piercing the corporate veil, stating "the corporate veil of the individual medical corporations should be set aside so that the partner doctors may be held personally responsible and accountable for all acts and transactions of [the partnership]."

Citing *Vasey*, the physician defendants contend these allegations are inadequate. In *Vasey*, individual and corporate defendants defaulted in an unlawful detainer action. The court entered default judgments against all defendants, but the liability of the individual defendants was predicated solely on an alter ego theory. On appeal, the individual defendants asserted that the complaint did not properly plead the alter ego theory and the Court of Appeal agreed. (*Vasey, supra*, 70 Cal.App.3d at pp. 748–749.)

The physician defendants argue that plaintiffs' alter ego allegations mirror the allegations found to be inadequate in *Vasey*. They are wrong. The problem with the complaint in *Vasey* was that the allegations only addressed one of the two elements required to establish alter ego liability. (*Vasey, supra*, 70 Cal.App.3d at p. 749.) Specifically, "the complaint alleged that any individuality and separateness of the corporation had ceased and that CDC was the alter ego of the individual defendants." (*Id*. at p. 745.) The complaint made no mention of the second element—inequity resulting from the recognition of the corporate form. (*Id*. at p. 749.) As we have said, plaintiffs' allegations address both required elements.

In addition, the physician defendants contend that plaintiffs' allegations are bare conclusory allegations rather than facts. To support their position, the physician defendants quote extensively from *First Western Bank & Trust Co. v. Bookasta* (1968) 267 Cal.App.2d 910, in which the plaintiff's allegations were indeed more comprehensive that those at issue here. But the holding there—that the allegations of that complaint were sufficient to withstand a demurrer—does not assist the physician defendants here. *Bookasta* did not claim to set a minimum standard for pleading alter ego liability nor has it been construed in that manner by other courts.

Plaintiffs' allegations, while not particularly detailed, set forth both required elements for alter ego liability. A plaintiff is not required to set forth every fact that may ultimately be proved. (See *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 236 [plaintiff asserting alter ego theory required to allege only " 'ultimate rather than evidentiary facts' "].) The issue is whether "the allegations were adequate to

17

apprise [a defendant] that he was being held accountable as an alter ego." (*Leek, supra*, 194 Cal.App.4th at p. 412.) Pleadings must be construed liberally and with a view to substantial justice. (Code Civ. Proc., § 452.) And, as here, " 'less particularity [of pleading] is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff … .' " (*Rutherford Holdings*, at p. 236.)

In sum, we conclude plaintiffs' complaint sufficiently apprised the physician defendants that alter ego liability was at issue.

### 2.2. Because the physician defendants did not address the alter ego theory in their motions, summary judgment was inappropriate.

At this point, we would typically examine the defendant's motion and supporting evidence to determine whether the defendant made a prima facie showing of the nonexistence of a triable issue of material fact, thereby shifting the burden to the plaintiff to make a prima facie showing that a triable issue of material fact exists. (See generally *Aguilar, supra*, 25 Cal.4th at p. 850; Code Civ. Proc., § 437c, subd. (p)(2).) Here, however, neither physician defendant addressed the alter ego theory of liability in his motion for summary judgment and/or adjudication.[4]

---

[4] Dee asserts that in ruling on the summary judgment motion, the trial court "found that Dr. Dee presented evidence in his moving papers that raised the alter ego issue." Having read both the trial court's ruling and Dee's moving papers, we conclude the court erred. In any event,

18

It is well-established that "[w]here the evidence presented by defendant does not meet its burden, 'the [summary judgment] motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff.' [Citation.] Accordingly, a plaintiff has no evidentiary burden on summary judgment unless and until the moving defendant first meets its initial burden. [Citation.]" (*Dix v. Live Nation Entertainment, Inc.* (2020) 56 Cal.App.5th 590, 604–605.) Plaintiffs thus assert that the physician defendants' failure to address alter ego liability precludes summary judgment in their favor. We agree.

The physician defendants, however, offer several arguments in support of the court's summary judgment ruling. We address them briefly.

First, the physician defendants note that a court has the inherent power to grant summary judgment on a ground not explicitly tendered by the moving party, so long as the opposing party has notice and the opportunity to respond. And they submit that plaintiffs had both notice and an opportunity to address the alter ego issue here. The principle advanced in the cases cited by the physician defendants is inapplicable here, however. In *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59 (*Juge*), for example, the defendant moved for summary judgment on a negligence claim. The defendant did not explicitly argue the absence of causation, but the undisputed evidence established that the defendant's alleged negligent act did not cause the plaintiff's injury. The court of appeal held that that the trial court

we are not bound by that finding in light of the applicable standard of review.

19

properly granted summary judgment due to the absence of causation, explaining that the court has the inherent power to grant summary judgment on a ground not explicitly tendered by the moving party "when the parties' separate statements of material facts and the evidence in support thereof demonstrate the absence of a triable issue of material fact put in issue by the pleadings and negate the opponent's claim as a matter of law." (*Id.* at p. 70.)

*Juge* and the other similar cases cited by the physician defendants are inapposite. They address situations in which a defendant moving for summary judgment has attacked a cause of action but may not have identified the precise legal argument later adopted by the court or may not have produced sufficient evidence to establish lack of merit. (See *Juge*, *supra*, 12 Cal.App.4th at pp. 71–72 [defendant moved for summary judgment on negligence claim but did not specifically assert absence of causation]; see also *Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 857–858 [defendant moved for summary judgment asserting immunity from liability without addressing statutory exceptions]; *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750–751 [defendant moving for summary judgment on civil conspiracy claim failed to put forth sufficient evidence to establish lack of merit but plaintiff's opposition evidence could be considered]; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1268, fn. 14 [same, citing *Villa v. McFerren*].) These cases, however, do not address—or apply to— the situation presented here, i.e., where a court purportedly resolves a claim set forth in the plaintiff's complaint, but which was not addressed by the defendant's motion for summary judgment.

Second, Dee claims that *plaintiffs* submitted the alter ego issue for decision by the court by addressing it in their opposition to his motion for summary judgment.[5] Dee again cites *Villa v. McFerren, supra*, which, as noted, considered whether evidence submitted in support of a plaintiff's opposition to a motion for summary judgment could cure a defendant's failure to meet its initial burden to establish the absence of any triable issue of material fact. The other case cited by Dee, *Lowe v. California League of Prof. Baseball* (1997) 56 Cal.App.4th 112, addresses the same issue, i.e., the quantum of proof offered by the defendant and the correctness of using evidence proffered by the plaintiff to cure any defect.

But the issue here is not that the physician defendants attempted but failed to show that plaintiffs' alter ego claim lacked merit in their motions for summary judgment. As we have said, the problem is that the physician defendants entirely failed to address the issue. As a result, plaintiffs were not required to address the issue either.

---

[5] As noted, plaintiffs did not address the alter ego issue in their opposition to Green's motion for summary judgment.

# DISPOSITION

The judgments are reversed. The matter is remanded with instructions to the trial court to vacate its orders granting the motions for summary judgment by Derek T. Dee and Edward Green III and enter new orders denying their motions for summary judgment. Plaintiffs Raymond A. Klug and Raymond A. Klug, M.D., a Medical Corporation shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

DHANIDINA, J.

22